UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED
DEC 02 2020

| | |
|---|---|
| JILL C. BURY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | 1:19-CV-01007-CBK<br><br>MEMORANDUM OPINION AND ORDER |

This matter is before the Court on plaintiff's appeal of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g), Docs. 1 and 14.

## BACKGROUND

Plaintiff claimed that she was disabled based upon arthritis, fibromyalgia, back problems, depression, anxiety, and memory problems. Her claim was denied both initially and upon reconsideration. Following a hearing, an administrative law judge ("ALJ") issued an opinion denying plaintiff's claim. Plaintiff appealed and the Appeals Counsel initially denied review but thereafter issued an order remanding the claim for a new hearing. Following the second administrative hearing, the administrative law judge again issued an opinion denying plaintiff's claim. The Appeals Counsel denied review, making the ALJ's decision final.

The ALJ used the familiar five-step sequential evaluation to determine disability:

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds

>  to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011) (internal C.F.R. citations omitted).

The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since April 4, 2016.

At step two, the ALJ determined that plaintiff's bilateral hip degenerative joint disease, bilateral knee patellofemoral pain, cervical degenerative disc disease, lumbar degenerative disc disease, degenerative changes of the bilateral hands, bilateral cubital tunnel syndrome, fibromyalgia, anxiety disorder, and depressive disorder represent severe impairments that significantly limit her ability to perform basic work activities. The ALJ rejected any contention that plaintiff's migraine headaches resulting from a prior head injury, restless leg syndrome, and memory problems represent severe impairments.

At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

"Prior to step four, the ALJ must assess the claimant's residual functioning capacity ("RFC"), which is the most a claimant can do despite her limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). The ALJ must also determine "the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor." Jones v. Astrue, 619 F.3d 963, 971 (8th Cir. 2010).

The ALJ went on to determine that plaintiff has the following residual functional capacity:

>  the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She

2

can occasionally lift and/or carry twenty pounds occasionally and lift and/or carry ten pounds frequently. The claimant can stand and/or walk (with normal breaks) about six hours in an eight-hour workday. She can sit (with normal breaks) for six hours in an eight-hour workday. The claimant can occasionally climb stairs, ramps, ladders, ropes and scaffolds. She can frequently stoop and occasionally kneel, crouch and crawl. The claimant can frequently handle and finger bilaterally. She should avoid concentrated exposure to hazards. The claimant can understand, remember and carry out routine, simple instructions. She can interact appropriately with supervisors, coworkers and the general public occasionally. The claimant can respond appropriately to changes in a work setting involving routine, simple tasks and make judgments on simple work-related decisions.

Admin. Rec. at 17.

Although plaintiff has medically determinable impairments, the ALJ rejected plaintiff's claimed intensity, persistence, and the limiting effects of her symptoms. The ALJ determined that plaintiff's statements as to her limitations were not consistent with objective medical evidence, her clinical presentations, her routine course of treatment and reliance on medications, her limited mental health treatment history, poor work record, the assessments of the State agency medical, and psychological consultants, and the record as a whole.

At step four, the ALJ determined that plaintiff was unable to perform her past relevant work as an institutional cook. This was because the physical and mental demands of that past relevant work exceed the residual functional capacity quoted above.

Since the ALJ determined that plaintiff could not return to her past relevant work, the burden shifted to the Commissioner to show that plaintiff retains the residual functional capacity to perform other work that exists in significant numbers in the national economy. Moore v. Astrue, 572 F.3d at 523. The ALJ determined at step five that plaintiff has the residual functional capacity to perform work that exists in significant numbers in the national economy. Specifically, the ALJ relied on the testimony of a vocational expert, as well as the Dictionary of Occupational Titles, to find that a

3

hypothetical individual with plaintiff's limitations could perform several types of light skilled work.[1] He thus denied plaintiff's application for disability benefits.

## LEGAL STANDARD

An individual is considered to be disabled if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord*, Bernard v. Colvin, 744 F.3d 482, 486 (8th Cir. 2014). An individual shall be determined to be disabled "only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Judicial review of the Commissioner's decision that claimant has failed to establish by a preponderance of the evidence that she is disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the Commissioner's conclusions." Draper v. Colvin, 779 F.3d 556, (8th Cir. 2015) (internal quotations omitted) (*quoting* Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007)). "We consider both evidence that detracts from the ALJ's decision, as well as evidence that supports it, but we will not reverse simply because some evidence supports a

---

[1] "The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a products assembler (DOT 706.687-010, light, unskilled, SVP 2) with 400,000 jobs in the national economy; electronics worker (DOT 726.687-010, light, unskilled, SVP 2) with 200,000 jobs nationally; and a small products assembler (DOT 739.687-030,light, unskilled, SVP 2) with about 50,000 jobs nationally." Admin. Rec. at 24.

4

conclusion other than that reached by the ALJ." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (internal citations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJs] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to properly evaluate medical opinion evidence in determining her RFC. Plaintiff claims that the ALJ gave too much weight to the assessments of the state agency consulting physicians because neither physician had access to the records that included her diagnosis of fibromyalgia. This was significant, plaintiff claims, because the RFC determination made by the state agency physicians did not take her fibromyalgia into account.

> The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The RFC must be supported by at least some medical evidence. *Wildman v. Astrue,* 596 F.3d 959, 969 (8th Cir. 2010).

Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013) (internal quotations omitted).

The ALJ stated that he accorded "great weight" to the opinions of the state agency physicians in determining plaintiff's RFC. Admin. Rec. at 21. The ALJ found that plaintiff's own complaints as well as the "objective evidence" supported their RFC determinations, though he thought additional evidence indicated that plaintiff had some manipulative restrictions that the state agency physicians did not note. Id.

In conjunction with his determination to give great weight to the opinions of the state agency physicians, the ALJ also decided to give "[f]or the most part, no weight" to the assessments of plaintiff's treating physician, Scott Purintun, M.D. Admin. Rec. at 22. Dr. Purintun opined that plaintiff was limited to lifting less than ten pounds and would require employment that allowed her to change her body position at will, i.e. standing, sitting, walking, etc. Dr. Purintun also stated an opinion that amounted to a belief that plaintiff was disabled. The ALJ gave no weight to Dr. Purintun's opinion because he

5

found it to be conclusory and contradicted by medical evidence. That medical evidence included "x-rays reflecting only mild degenerative changes at various locations," as well as the plaintiff's statement that she could lift five pounds more than the ten Dr. Purintun stated in his assessment. Admin. Rec. at 22.

It is important to note that "the opinions of nonexamining sources are generally... given less weight than those of examining sources." Wildman v. Astrue, 596 F.3d 959, 967–68 (8th Cir. 2010), quoting Willcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008). That general rule is bullied by departmental regulations stating that "when evaluating a nonexamining source's opinion, the ALJ 'evaluate[s] the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." Id, quoting 20 C.F.R. § 404.1527(d)(3). In Wildman v. Astrue, an Eighth Circuit panel upheld the disregard of state agency consultant opinions because "the state agency evaluators did not have access to medical records from 2005 and 2006—most notably Dr. Burstain's treatment notes from that period that document Wildman's repeated noncompliance. The state agency doctors also did not have the opportunity to review Dr. Michaelson's mental status exams." Wildman, 596 F.3d at 967–68.

In the instant case, the opinions of plaintiff's treating sources were disregarded in favor of those of the state agency consultants. But, as noted, the state agency physicians did not physically examine plaintiff, nor did they have the most complete information. The agency consultants did not even consider plaintiff's fibromyalgia, a serious impairment that the ALJ credited to plaintiff. *See* Admin. Rec. at 13.

The RFC that the ALJ arrived at was not supported by medical evidence that accurately reflected plaintiff's condition. The opinions of the state agency consultants were not properly credited over those of plaintiff's treating physicians because those consultants did not have access to plaintiff's complete medical records, nor did they examine plaintiff directly. This is coupled with the fact that the treating physician's opinion was discounted for illogical reasons. First, that a physician believed a patient capable of lifting a mere five pounds more weight that a patient believed herself capable

6

of lifting is not a good reason to entirely discount said physician's medical opinion. For one thing, a five-pound discrepancy is an objectively small one. Additionally, it would be difficult for the average person to lift a single object and know off hand whether it weighted ten or fifteen pounds without some point of reference. Second, the fact that the treating physician discussed plaintiff's capabilities means that his opinion was not entirely conclusory. Thus, the ALJ could disregard any conclusory assertions that plaintiff is disabled, while still crediting specific assessments of her physical capabilities.

In addition to his determinations of which medical opinions to credit and discredit, the ALJ also engaged in his own evaluation of plaintiff's x-ray exam results. But the ALJ did not have the appropriate medical expertise to independently evaluate plaintiff's x-ray examination results and, from said results, extrapolate her physical condition. Plaintiff has a number of recognized serious impairments; among her impairments are several that would not appear on an x-ray image.

It is a matter of settled law that "an ALJ must not substitute his opinions for those of the physician." Combs v. Berryhill, 878 F.3d 642, 647 (8th Cir. 2017) (quoting Finch v. Astrue, 547 F.3d 933, 938 (8th Cir. 2008) and Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir. 1990)). And while an "ALJ is not required to discuss every piece of evidence submitted," Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998), she must still fully develop the record and make an assessment based upon some medical evidence. Combs, 878 F.3d at 646; see also Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.").

In short, the ALJ did not fully and fairly develop the record in this case. The standard of review for the determinations of the Commissioner in social security disability cases is a lenient one. That said, the ALJ's opinion in this case as to plaintiff's RFC is not sufficiently supported by medical evidence. There is no discussion of plaintiff's fibromyalgia in the RFC determination. The opinion of plaintiff's treating physician is disregarded in favor of the opinions of nonexamining sources whose decisions were made without access to any of plaintiff's medical records relating to her

7

fibromyalgia diagnosis. And the ALJ impermissibly substituted his own judgment for that of medical professionals. For these reasons, the determination of the Commissioner cannot stand.

The Court will refrain from discussing plaintiff's alternative arguments for relief because the infirmities discussed above warrant reversal on their own.

## ORDER

Based upon the foregoing, IT IS HEREBY ORDERED:

1. The plaintiff's motion, Doc. 14, for reversal of the Commissioner's decision is GRANTED.

2. The final decision of the Commissioner is REVERSED.

3. The decision of the Commissioner is reversed and remanded for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 2nd day of December, 2020.

BY THE COURT:

/s/ Charles B. Kornmann
CHARLES B. KORNMANN
United States District Judge